UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANNE DOWN,

    Plaintiff,

v.

ANN ARBOR PUBLIC SCHOOLS,
CYNTHIA RYAN, AND DAVID COMSA,

    Defendants.
_____/

Case No. 17-13456

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS AND MOTION TO DISMISS [17]**

    This is the second civil rights action Plaintiff Dianne Down has filed against her employer in this Court. She brings this action against Ann Arbor Public Schools; its (now retired) executive director of human resources, Cynthia Ryan; and its deputy superintendent, David Comsa (collectively "Defendants"). Her amended complaint asserts claims under the Americans with Disabilities Act ("ADA") and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), as well as three claims under 42 U.S.C. § 1983 based on alleged violations of the First and Fourteenth Amendments of the United States Constitution. The matter is before the Court on Defendants Ann Arbor Public Schools and Cynthia Ryan's motion for judgment on the pleadings and motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) and 12(b)(1) respectively. (Dkt. 17.) Defendant David Comsa filed a joinder. (*See* Dkt. 19.) Plaintiff filed a response to the motion, and Defendants filed a reply. (Dkts. 22, 24.) The Court heard

oral arguments on the motion on December 18, 2018. For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendants' motion.

I. **Background**

In 2013, Plaintiff, a high school teacher in the Ann Arbor Public Schools, was placed on administrative paid leave of absence pending an investigation of allegations of verbal abuse of students and instructed to appear for a psychological examination to determine whether "she was mentally fit for the professional duties associated with teaching at the high school level." *Down v. Ann Arbor Pub. Sch.*, No. 14-10086, 2015 U.S. Dist. LEXIS 128982, at *2 (E.D. Mich. Sept. 25, 2015). Shortly thereafter, Plaintiff filed her first lawsuit against Defendant Ann Arbor Public Schools and Defendant Ryan, asserting claims under the Fourth Amendment and the PWDCRA. *See id.* at *1-2. She also sought an injunction prohibiting Defendants from requiring her to submit to the examination. After conducting an extensive evidentiary hearing and considering the testimony of several witnesses, including Plaintiff, this Court concluded as follows:

> Given the long history of issues that have evolved with Plaintiff over the years, the long history of parent complaints and student difficulties, including the summer school problems which seem particularly difficult, the Court finds that the Ann Arbor Public Schools have established that it is reasonable for them, under these circumstances, to require Plaintiff to undergo [a psychological examination] to see if there is some medical or mental or emotional condition which is preventing Plaintiff from becoming an effective teacher and performing her teaching job. The Ann Arbor Public Schools have satisfied the requirement for invoking ¶ 4.911 [of the collective bargaining agreement] by showing that it had reason to suspect that Plaintiff was unable to perform her professional duties due to physical, mental, and/or emotional disability.

*Down v. Ann Arbor Pub. Sch.*, 29 F. Supp. 3d 1030, 1037 (E.D. Mich. 2014). The first lawsuit proceeded to discovery and eventually summary judgment. In its opinion granting Defendants' motion for summary judgment, the Court relied upon and

2

incorporated its previous findings of fact.  The Court held that there was no genuine issue of material fact regarding the allegedly unreasonable search under the Fourth Amendment nor was there a genuine issue of material fact regarding whether Plaintiff suffered from a disability that is recognized under the PWDCRA.  *See Down v. Ann Arbor Pub. Sch.*, 2015 U.S. Dist. LEXIS 128982, at *13, 16.

The psychological examination was eventually conducted in October of 2015.  (Dkt. 12, Pg ID 64.)  Plaintiff learned of the results in the Spring of 2016.  (*Id.*)  The results revealed that there was no psychological basis to keep Plaintiff from teaching.  (*Id.*)  However, Defendants did not allow Plaintiff to return to her teaching job and placed her on another administrative paid leave of absence.  (*Id.*)

Plaintiff's filed her current lawsuit in October of 2017.  Count I of her amended complaint alleges that Defendants required her to undergo a medical examination that was unlawful pursuant to the ADA.  (*Id.* at Pg ID 70-71.)  Counts II, III, and IV allege that Defendants retaliated against Plaintiff for filing her first lawsuit in violation of the PWDCRA, the ADA, and the First Amendment, respectively.  (*Id.* at Pg ID 71-78.)  The alleged retaliatory acts include placing Plaintiff on administrative leave, threatening to proceed with a tenure action against her and possible termination when they had no intention to do so, refusing to return Plaintiff to her position upon receipt of favorable results of the psychological examination, permitting and/or conspiring with the psychologist to delay production of a written report of the examination, delaying Plaintiff's access to records of her continuing education in an effort to prevent her from renewing her teaching certificate, refusing to provide her with district-provided professional development courses, and refusing to verify to the Michigan Department of

Education the district-provided professional development hours she had already completed. Counts V and VI allege violations of the Equal Protection and Due Process Clauses. (*Id.* at Pg ID 78-80.) As a basis for those claims, Plaintiff asserts that Defendants refused to submit signed verification forms of her district-provided professional development courses to the Michigan Department of Education and took actions that led to an audit of her professional development hours, putting her teaching certificate at risk for suspension or revocation.

## II. Legal Standard

Defendants seek a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Motions for a judgment on the pleadings under Rule 12(c) are analyzed under the same standard as motions to dismiss for failure to state a claim under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). In reviewing the motion, courts "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him [or her] to relief." *Id.* at 512 (citing *Mixon*, 193 F.3d at 400).

Defendants also seek dismissal of Counts V and VI of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction based on their argument that these claims are moot. "Mootness implicates the Court's subject matter jurisdiction and matters outside the pleadings may be considered on a Rule 12(b)(1) motion." *Klinger v. Corr. Corp. of Am., Inc.*, No. 4:11CV2299, 2012 U.S. Dist. LEXIS 184316, at *32 (N.D. Ohio Dec. 13, 2012) (citing

4

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986)).

### III.     Analysis

#### A.     Whether Plaintiff is Precluded from Bringing her ADA Claim

In Count I, Plaintiff alleges that Defendants required her to undergo an unlawful medical examination in violation of the Americans with Disabilities Act, which only allows medical examinations that are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Defendants argue that this claim should be dismissed on the basis of issue preclusion due to the Court's ruling in Plaintiff's prior lawsuit.

Issue preclusion, also known as collateral estoppel, "'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)). For issue preclusion to be applicable, four requirements must be satisfied:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* at 1098 (quoting *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009)).

Plaintiff argues that issue preclusion does not apply here because, in the prior lawsuit, she had asserted a § 1983 claim based on an unreasonable search under the Fourth Amendment and, this time, her theory is based on a violation of the ADA. More specifically, Plaintiff argues that the Court did not decide whether the psychological examination was job-related and consistent with business necessity in the prior lawsuit.

The fact that Plaintiff relies on a different legal theory in this case does not prevent the application of the doctrine of issue preclusion. *See id.* at 1098 ("Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory . . . ." (citing *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992))). Moreover, while Plaintiff is correct that different legal standards apply to the reasonableness inquiry under the Fourth Amendment and the business necessity exception under the ADA, the applicability of issue preclusion here depends on whether the same issues were raised and litigated in the first case.

In Plaintiff's prior lawsuit, the Court found no Fourth Amendment violation because Defendants had "reason to suspect that Plaintiff might be suffering from some degree of emotional impairment on or before the date the [examination] was scheduled." *See Down*, 2015 U.S. Dist. LEXIS 128982, at *12. In this lawsuit, the issue is whether the medical examination fits within the business necessity exception set forth in the ADA. Courts have found that this exception applies when "'(1) the employee requests an accommodation; (2) the employee's ability to perform the essential functions of the job is impaired; or (3) the employee poses a direct threat to himself or others.'" *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)

(quoting *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007)). Relevant factors courts take into account when making the determination of whether an employee's ability to perform the functions of the job is impaired or the employee poses a threat are: "(1) the manifestation or symptom of a disability affecting an employee's conduct; (2) the frequency of occurrences; (3) the nature of the job; (4) the specific conduct at issue; and (5) the working environment." *Hunault v. FCA US LLC*, No. 15-12772, 2016 U.S. Dist. LEXIS 169435, at *25 (E.D. Mich. Oct. 26, 2016). The Court's previous rulings addressed a number of these factors. For example, the Court found "that Plaintiff ha[d] a long history of difficult and problematic interactions with students and complaints from parents" and that she "was unable to acknowledge these difficulties and deal with them in the most effective manner." *See Down*, 29 F. Supp. 3d at 1037. Thus, even though the Court did not explicitly address whether the medical examination was job-related and consistent with business necessity in the first case, the Court's findings related to the Fourth Amendment claim encompassed a determination that Plaintiff's ability to perform the functions of her job was impaired. The Court therefore finds that issue preclusion applies.[1]

And even if issue preclusion does not apply in this case due to the different legal standards, the Court finds that the doctrine of claim preclusion does apply. The purpose of claim preclusion, also known as res judicata, "'is to promote the finality of

---

[1] Plaintiff also argues that the Fourth Amendment claim in her first lawsuit raised questions of law that were decided by the Court, while her current ADA claim raises questions of fact that should be decided by a jury. While Plaintiff's ADA claim does raise questions of fact, this distinction does not defeat the application of the doctrine of issue preclusion. *See, e.g., B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1304 (2015) (noting that "the right to a jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was entered by a juryless tribunal").

judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources.'" *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 479 (6th Cir. 2014) (unpublished) (quoting *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). Under this doctrine, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Id.* at 480 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)). Claim preclusion is applicable when

> (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.

*Id.* at 480 (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

Plaintiff argues that her ADA claim was not ripe at the time of her prior lawsuit because the medical examination had not been conducted at that point. However, just as she raised the Fourth Amendment issue in the first lawsuit in an attempt to prevent Defendants from requiring her to undergo the medical examination, she could have raised her ADA claim at that time as well. *See, e.g.*, *Yin v. California*, 95 F.3d 864, 867 (9th Cir. 1996) (asserting claims under both the Fourth Amendment and the ADA in an attempt to prevent her employer from requiring her to undergo a medical examination). Moreover, because both claims address the propriety of the medical examination, "the same underlying factual evidence could support and establish both the former and present causes of action." *See Heike*, 573 F. App'x at 483. Therefore, there is an identity of claims between the two actions and claim preclusion applies. In sum, the

Court finds that Plaintiff's ADA claim (Count I) is barred by both the doctrines of issue and claim preclusion.

> **B.   Whether Defendants Ryan and Comsa Can Be Held Individually Liable Under the PWDCRA and ADA**

In Counts II and III, Plaintiff alleges that Defendants retaliated against her for bringing her first lawsuit in violation of both the PWDCRA and ADA. Defendants argue that these claims should be dismissed against Defendants Ryan and Comsa because supervisors do not qualify as employers under the statutes. *See, e.g.*, *Sullivan v. River Valley School District*, 197 F.3d 804, 808 n.1 (6th Cir. 1999) (noting that "[i]ndividual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases"). The Court notes that while the statutes prohibit discrimination by "employer[s]," Mich. Comp. Laws § 37.1202; 42 U.S.C. §§ 12111, 12112, the retaliation provisions are broader and prohibit retaliation by "person[s]," Mich. Comp. Laws § 37.1602; 42 U.S.C. § 12203(a). Despite this difference, the courts have similarly held that individual liability may not be imposed under the retaliation provisions. *See, e.g.*, *Smith v. Heyns*, No. 12-CV-11373, 2013 U.S. Dist. LEXIS 108130, at *55 (E.D. Mich. June 21, 2013).

Plaintiff concedes that there is no individual liability under the ADA but argues that individual liability may be imposed under the PWDCRA. In support of her argument, Plaintiff relies on cases holding that individual liability exists in the context of a different statute, Michigan's Elliott-Larsen Civil Rights Act. *See, e.g.*, *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 861 (Mich. 2005). However, Michigan courts have interpreted that statute differently than its federal counterpart, Tittle VII, due in part to differences between the two statutes. *See id.* at 859. In contrast, Michigan courts have

9

found the PWDCRA and ADA to be similar. *See Chiles v. Mach. Shop, Inc.*, 606 N.W.2d 398, 405 (Mich. Ct. App. 1999) ("[The Michigan Court of Appeals] and the Michigan Supreme Court have noted that the federal [ADA] and the PWDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PWDCRA.") (citations omitted). Because the ADA does not impose individual liability on supervisors, the Court finds that supervisors similarly may not be held personally liable under the PWDCRA. *See Farhat v. Mich. Dep't of Corr.*, No. 12-10864, 2012 U.S. Dist. LEXIS 165422, at *9-10 (E.D. Mich. Nov. 20, 2012) (finding the same). Both Counts II and III brought against Defendants Ryan and Comsa in their individual capacities fail.

### C. Whether Defendant Ann Arbor Public Schools Is Immune from Plaintiff's PWDCRA and ADA's Claims

Defendants also argue that Plaintiff's retaliation claims under the PWDCRA and ADA should be dismissed against Defendant Ann Arbor Public Schools due to governmental immunity. *See* Mich. Comp. Laws § 691.1407(1) ("a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function"). Plaintiff responds by arguing that governmental immunity applies to common law tort liability only and not to claims under civil rights statutes.

As Plaintiff notes, the PWDCRA, by its own terms, prohibits retaliation by a "person," Mich. Comp. Laws § 37.1602, and the definition of "person" includes a "governmental entity or agency," Mich. Comp. Laws § 37.1103(g). Due to similar language in Michigan's Elliott-Larsen Civil Rights Act, Michigan courts have held that governmental immunity does not apply to claims brought under that statute. *See, e.g.*,

*Diamond v. Witherspoon*, 696 N.W.2d 770, 780 (Mich. Ct. App. 2005) (noting that "[t]he Legislature has allowed specific actions against the government to stand"). The Court therefore finds that governmental immunity does not apply to the PWDCRA and Defendant Ann Arbor Public Schools is not immune from Plaintiff's claim pled in Count II.

Mich. Comp. Laws § 691.1407 is also inapplicable to Plaintiff's retaliation claim under the ADA. *See, e.g.*, *Doe v. Dearborn Pub. Sch.*, No. 06-12369, 2008 U.S. Dist. LEXIS 25514, at *24-25 (E.D Mich. Mar. 31, 2008) (applying government immunity under Mich. Comp. Laws § 691.1407 to state law claims only). And while the Eleventh Amendment does provide immunity from claims under the ADA for states and their agencies, this immunity does not apply to municipalities. *See S.J. v. Hamilton Cty.*, 374 F.3d 416, 419-20 (6th Cir. 2004). Thus, Defendant Ann Arbor Public Schools in not immune from Count III.

### D. Whether Plaintiff's Retaliation Claims are Time-Barred

Defendants also argue that Plaintiff is time-barred from alleging that Defendants retaliated against her by keeping her on administrative leave.[2] Defendants note that the limitations period is three years under the PWDCRA. *Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368, 381 (Mich. 1986), *overruled on other grounds by Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646 (Mich. 2005). The limitations period is also three years for § 1983 actions that arise in Michigan. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). And as for

---

[2] Defendants acknowledge that Plaintiff has pled other retaliatory acts, but argue that those actions are not sufficiently adverse to be a basis for a retaliation claim, as will be discussed below.

Plaintiff's ADA retaliation claim, Plaintiff must have filed a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000); 42 U.S.C. § 2000e-5(e). Defendants argue that because Plaintiff asserts that they retaliated against her for filing her first lawsuit, the date of that lawsuit—January 9, 2014—is when the limitations period started running. Plaintiff did not file her charge of discrimination with the EEOC until August 26, 2016, and her complaint in this lawsuit was filed on October 23, 2017.

Plaintiff responds by arguing that her retaliation claims are based on the second administrative leave she was placed on in March of 2016. Defendants assert that Plaintiff was placed on the second administrative leave for the same reason she was placed on leave in the first place and therefore there was no new action. Defendants further argue that Michigan does not recognize the continuing violations doctrine and that under the federal doctrine, the limitations period is not tolled for "continual ill effects from an original violation." (Dkt. 17, Pg ID 178 (citing *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)).

While Defendants attempt to characterize Plaintiff's position as one based on the continuing violations doctrine, the Court finds that Plaintiff has sufficiently pled a new, affirmative act—Defendants placing her on a second administrative leave in March of 2016—that started the limitations period running. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002) (holding that "[e]ach discrete discriminatory [or retaliatory] act starts a new clock for filing charges alleging that act"). Moreover, Defendants' arguments raise questions of fact that cannot be resolved at this early stage of the litigation. *See Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger*

*Corp.*, 839 F.3d 458, 464 (6th Cir. 2016) (noting that "courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date") (unpublished). Whether Plaintiff was placed on the second administrative leave in retaliation for filing her first lawsuit or for the reason she was placed on leave in the first place goes to the merits of Plaintiff's claim. Thus, the question of whether Plaintiff is time-barred from asserting her retaliation claims based on the second administrative leave she was placed on by Defendants survives this motion.

### E. Whether Plaintiff Sufficiently Pled an Adverse Action as the Basis for Her Retaliation Claims

As the basis for her retaliation claims, in addition to being placed on administrative leave, Plaintiff pleads the following allegedly retaliatory actions undertaken by Defendants: threating a tenure action when they had no intention of initiating one, refusing to return her to her teaching position after the completion of the medical examination, conspiring with the psychologist to delay production of the report of the exam, delaying Plaintiff's access to a record of her continuing education hours, refusing to provide her with district-provided professional development courses, and refusing to verify her professional development hours to the Michigan Department of Education. Having argued that Plaintiff is time-barred from asserting that Defendants retaliated against her by placing her on administrative leave, Defendants argue that the remaining actions do not constitute actions sufficiently adverse to sustain a retaliation claim. However, the Court has rejected the argument based on the limitations period, and even Defendants do not argue that being placed on administrative leave is not a sufficiently adverse action.

Moreover, whether an action is sufficiently adverse is a question of fact, *see Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010), and whether a plaintiff's allegations create a genuine issue of material fact is an issue decided on a motion for summary judgment, not a motion for a judgment on the pleadings.[3] In fact, even at the summary judgment stage, "if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his [or her] rights, then the act may not be dismissed." *Id.* at 524 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)).

The Court also notes that in the First Amendment context, the Sixth Circuit has made it clear "that the adverse-action requirement 'is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.'" *Id.* at 524 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). Similarly, for her ADA claim, "plaintiff's burden of establishing an adverse action is less onerous in the retaliation context than in the anti-discrimination context." *Covert v. Monroe County Dep't of Job & Family Servs.*, No. 2:08-CV-744, 2010 U.S. Dist. LEXIS 55882, at *22 n.10 (S.D. Ohio June 8, 2010) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006)).[4] In sum, the Court finds that Plaintiff has pled sufficient adverse acts to serve as a basis for her retaliation claims.

---

[3] Both cases relied upon by Defendants were appeals of a grant of summary judgment. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 178 (6th Cir. 2004); *Chen v. Wayne State Univ.*, 771 N.W.2d 820, 838 (Mich. Ct. App. 2009).

[4] These cases arose under Title VII. However, retaliation claims brought under the ADA and Title VII are analyzed under the same framework. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997).

### F. Whether Plaintiff's Equal Protection and Due Process Claims are Moot

Plaintiff has brought two additional § 1983 Claims based on alleged violations of the Equal Protection and Due Process clauses of the United States Constitution. As a basis for these claims, she alleges that Defendants refused to sign and submit the required forms to verify her district-provided professional development hours to the Michigan Department of Education, which may lead to the revocation of her Michigan teaching certificate. Defendants argue that these claims are now moot, because the Michigan Department of Education has recently completed its audit based on information provided by Defendants[5] and decided not to take any action against Plaintiff's teaching certificate.

"Under Article III of the Constitution, [a federal court's] jurisdiction extends only to actual cases and controversies. [A federal court has] no power to adjudicate disputes which are moot." *McPherson*, 119 F.3d at 458 (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)). "'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Id.* Here, Plaintiff seeks injunctive relief requiring Defendants to submit the required forms in support of her teaching certificate renewal. Defendants have resolved this issue and injunctive relief is no longer necessary.

Plaintiff argues, however, that even if her request for injunctive relief is moot, her claim for damages is not. The Sixth Circuit has noted that "where a claim for injunctive relief is moot, relief in the form of damages for a past constitutional violation is not

---

[5] Plaintiff asserts that Defendants did not actually submit the required forms; instead, Defendants' attorney sent a letter to the Michigan Department of Education.

affected." *Gottfried v. Med. Planning Servs.*, 280 F.3d 684, 691 (6th Cir. 2002). Here, Plaintiff seeks compensatory and punitive damages, and "[n]ominal damages are also available in actions claiming a violation of constitutionally protected rights." *Id.* at 691 (citing *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978)). Thus, due to Plaintiff's request for damages, Counts V and VI are not moot. The Court finds that it has subject matter jurisdiction over both claims.

### G. Whether Plaintiff Has Stated a Claim for An Equal Protection Violation

The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from making distinctions that "either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) (citing *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)). As Defendants note, however, the Supreme Court has held that a plaintiff may not bring a "class-of-one" claim in the public employment context. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008) ("To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."). Plaintiff responds by arguing that because the *Engquist* court was focused on the discretionary nature of

decision-making by public employers, this rule should not apply to non-discretionary matters.

While the language in *Engquist* regarding discretionary acts "signaled a willingness to extend the exception to the class-of-one doctrine well beyond the government-employment context," *Argue v. Burnett*, No. 1:08-cv-186, 2010 U.S. Dist. LEXIS 31817, at *34 (W.D. Mich. Apr. 1, 2010), the rule applies to public employees suing their employers. Therefore, Plaintiff cannot sue her employer on a class of one theory.

Plaintiff also argues that there may be other teachers similarly situated to her— teachers on administrative leave whose district-provided professional development hours are not being verified by Defendants. Even if such teachers exist, Plaintiff's theory would still be based on a class-of-one theory. *See, e.g.*, *Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016) (defining a class of one as "a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for different treatment absent a rational reason"). The Court therefore finds that Plaintiff has failed to state a claim pursuant to the Equal Protection Clause and Count V is dismissed.

### H. Whether Plaintiff Has Stated a Claim for a Due Process Violation

The Due Process Clause of the Fourteenth Amendment prohibits state actors from depriving citizens of life, liberty, or property without due process of law. While the Court agrees with Plaintiff that she has a property interest in her teaching certificate, "not every injury to an alleged property interest rises to the level of a constitutional violation." *Farkas v. Ross-Lee*, 727 F. Supp. 1098, 1104 (W.D. Mich. 1989); *see also*

*Samad v. Jenkins*, 845 F.2d 660, 662 (6th Cir. 1988) (finding that "there must be a substantial, tangible harm and a material change to an employee's status before the employee possesses a viable § 1983 cause of action"). Here, the alleged violation—failing to certify her district-provided professional development hours—does not rise to the level of a constitutional violation. The Court finds that Plaintiff has failed to state a claim pursuant to the Due Process Clause and Count VI is therefore dismissed.

IV. **Conclusion**

For the above-stated reasons, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part, and Defendants' motion to dismiss Counts V and VI for a lack of subject matter jurisdiction is DENIED. The claims that remain viable are Plaintiff's retaliation claims under the PWDCRA and ADA (Counts II and III) against Defendant Ann Arbor Public Schools only and her retaliation claim under § 1983 based on an alleged violation of her First Amendment rights (Count IV) against all Defendants.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager
