UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANNE DOWN,

    Plaintiff,

v.

ANN ARBOR PUBLIC SCHOOLS,
CYNTHIA S. RYAN, and DAVID COMSA,

    Defendants.

_____/

Case No. 17-13456

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [45]**

This is the second civil rights action Plaintiff Dianne Down has filed against her employer in this Court.  She brings this action against Ann Arbor Public Schools ("AAPS"); AAPS' (now retired) executive director of human resources, Cynthia Ryan; and AAPS' deputy superintendent, David Comsa (collectively "Defendants").  The claims that remain viable are Plaintiff's retaliation claims under the Americans with Disabilities Act ("ADA") and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") against Defendant AAPS and a First Amendment retaliation claim under 42 U.S.C. § 1983 against all Defendants.

The matter is before the Court on Defendants' motion for summary judgment. (Dkt. 45.)  Plaintiff did not file a timely response to the motion.  And while the Court granted Plaintiff's first two requests for an extension of time to file a response, the Court denied her third request for an extension, finding her conduct constituted inexcusable neglect.  (*See* dkt. 61.)  Thus, the Court treats this motion as unopposed.  The Court finds that the decision process would not be significantly aided by oral argument.

1

Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendants' motion will be decided on the briefs and without oral argument. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

### I.     Background

In 2013, Plaintiff, a high school teacher in the Ann Arbor Public Schools, was placed on administrative paid leave of absence pending an investigation of allegations of verbal abuse of students and instructed to appear for a psychological examination to determine whether "she was mentally fit for the professional duties associated with teaching at the high school level." *Down v. Ann Arbor Pub. Sch.*, No. 14-10086, 2015 U.S. Dist. LEXIS 128982, at *2 (E.D. Mich. Sept. 25, 2015). Shortly thereafter, in January 2014, Plaintiff filed her first lawsuit against Defendant AAPS and Defendant Ryan, asserting claims under the Fourth Amendment and the PWDCRA. *See id.* at *1-2. She also sought an injunction prohibiting Defendants from requiring her to submit to the examination. After conducting an extensive evidentiary hearing and considering the testimony of several witnesses, including Plaintiff, this Court denied Plaintiff injunctive relief and concluded as follows:

> Given the long history of issues that have evolved with Plaintiff over the years, the long history of parent complaints and student difficulties, including the summer school problems which seem particularly difficult, the Court finds that the Ann Arbor Public Schools have established that it is reasonable for them, under these circumstances, to require Plaintiff to undergo [a psychological examination] to see if there is some medical or mental or emotional condition which is preventing Plaintiff from becoming an effective teacher and performing her teaching job. The Ann Arbor Public Schools have satisfied the requirement for invoking ¶ 4.911 [of the collective bargaining agreement] by showing that it had reason to suspect that Plaintiff was unable to perform her professional duties due to physical, mental, and/or emotional disability.

*Down v. Ann Arbor Pub. Sch.*, 29 F. Supp. 3d 1030, 1037 (E.D. Mich. 2014). The first lawsuit proceeded to discovery and in September 2015, the Court entered summary judgment in favor of Defendants on both Plaintiff's claims. *See Down*, 2015 U.S. Dist. LEXIS 128982, at *16.

The psychological examination was eventually conducted in October 2015. Plaintiff learned of the results in the spring of 2016. The results revealed that there was no psychological basis to keep Plaintiff from teaching. However, Defendants did not allow Plaintiff to return to her teaching job. Instead, Defendants sent Plaintiff a letter, dated March 15, 2016, giving her two weeks to inform them of whether she intended to request an additional examination at her own expense or to accept the findings. (Dkt. 26-2, PgID 338-39.) The letter further informed her that "after two weeks you will be reinstated as an active employee in the District. However, you will be immediately placed on an administrative paid leave of absence, pending an investigation of allegations against you which gave rise to your initial placement on paid administrative leave pending the results of [a psychological examination] and the potential filing of tenure charges against you seeking termination of your employment." (*Id.* at PgID 338.)

Plaintiff filed the current lawsuit in October 2017, alleging, in part, that Defendants retaliated against her for filing her first lawsuit in violation of the PWDCRA, the ADA, and the First Amendment.[1] The alleged retaliatory acts include Defendants placing Plaintiff on administrative leave, threatening to proceed with a tenure action and possible termination when they had no intention to do so, refusing to return Plaintiff to

---

[1] A number of additional claims brought by Plaintiff were dismissed by the Court upon Defendants' motion for a judgment on the pleadings. (Dkt. 27.)

3

her position upon receipt of favorable results of the psychological examination, permitting and/or conspiring with the psychologist to delay production of a written report of the examination, delaying Plaintiff's access to records of her continuing education in an effort to prevent her from renewing her teaching certificate, refusing to provide her with professional development courses, and refusing to verify to the Michigan Department of Education the district-provided professional development hours she had already completed.

Defendants now move for summary judgment.[2] They rely in large part on the declarations of Defendants Ryan and Comsa. Defendant Ryan attests that Plaintiff was kept on administrative leave for the same reasons she was placed on leave in the first place—"her long history of ineffective performance and inappropriate behavior." (Dkt. 45-3, PgID 494.) She further states that the decision to keep Plaintiff on administrative leave was not motivated by any discriminatory or retaliatory animus but was rather motivated by considerations of what would be best for the students and the school. (*Id.*) She also states that to her knowledge, Defendants did not have anything to do with the delay in receiving the report of the psychological examination. (*Id.*)

Defendant Comsa similarly attests that Plaintiff was kept on leave because of her inappropriate conduct and a determination that this would be in the best interest of the students and the school. (Dkt. 45-5, PgID 504.) He also states that Defendants did not

---

[2] Defendants argue, in the alternative, that even if Plaintiff's claims do not fail, she is not entitled to the recovery of money damages for the majority of her claims. Defendants also request sanctions. More specifically, they argue that because Plaintiff has not made her Rule 26 disclosures or filed a witness list, her claims should be dismissed or she should be precluded from calling any witnesses at trial.

4

verify Plaintiff's continuing education hours because they believed she had made misrepresentations in her renewal application regarding the completion of certain continuing education hours she had not in fact completed and that the hours Plaintiff had completed did not add up to the number of hours required to renew her teaching certificate.[3]  (*Id.* at PgID 504-05.)  Finally, Defendant Comsa avers that in or about May 2017, Defendants considered proceeding with a tenure action and possible termination of Plaintiff due to her history of inappropriate conduct but ultimately decided not to do so at that time.  (*Id.* at PgID 505.)

## II. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"  *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for

---

[3] According to Defendant Comsa, the Michigan Department of Education ultimately determined that "although the application was submitted with inaccurate information," no action would be taken against Plaintiff's teaching certificate because the MDOE was able to verify that Plaintiff did complete the required number of hours. (Dkt. 45-5, PgID 505.)  Also according to Defendant Comsa, Plaintiff was warned that "submission of inaccurate professional learning information, or any other inaccurate information, in future applications can result in suspension" of her teaching certificate. (*Id.*)

5

the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

"[W]here a party offers no timely response to a motion for summary judgment," the Court must still review the record and ensure that the moving party has discharged its summary judgment burden. *See F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (internal quotation marks and citation omitted). However, the Court need not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving party*." See Guarino*, 980 F.2d at 410.

**III. Analysis**

Under the ADA's retaliation provision, it is unlawful for an employer to discriminate against any of its employees because that employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). The PWDCRA contains a similar provision. *See* Mich. Comp. Laws § 37.1602(a). The First Amendment of the United States Constitution "prohibits retaliation by a public employer against an employee on the basis of certain instances of protected speech by the employee." *See Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

6

In order to establish retaliation under the ADA and PWDCRA, Plaintiff must prove that 1) she engaged in protected activity, 2) Defendants knew she engaged in protected activity, 3) an adverse employment action was subsequently taken against her, and 4) there was a causal connection between the protected activity and the adverse employment action. See *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) (ADA); *Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 437 (Mich. Ct. App. 2002) (PWDCRA). In order to establish a claim of First Amendment retaliation, Plaintiff must prove 1) she engaged in constitutionally protected speech or conduct; 2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by her protected conduct. See *Scarbrough*, 470 F.3d at 255.

When there is no direct evidence of retaliation, a plaintiff's ADA and PWDCRA claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Once the plaintiff has established her prima facie case, the burden of proof then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once the employer articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was pretextual. *Id.* at 804. With regard to a retaliation claim under the First Amendment, once the plaintiff has established her prima facie case, the burden of production shifts back to the defendants to show that they would have taken the same action in the absence of the protected activity. See *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010).

Because Plaintiff did not file a timely response to Defendants' motion for summary judgment, she did not establish her prima facie case of retaliation. Nonetheless, the Court will address Defendants' arguments to the extent possible. Defendants argue that Plaintiff cannot establish a prima facie case of retaliation because there is no evidence that her protected activity was causally connected to the allegedly adverse acts.[4] Defendants further argue that they had legitimate, non-retaliatory reasons for all of their actions.

Defendants argue that Plaintiff cannot prove causation because the earliest of the allegedly adverse acts occurred twenty-two months after Plaintiff filed her first lawsuit. The Court notes that Plaintiff was already on administrative leave at the time she filed her first lawsuit, and thus an opportunity to act on any retaliatory animus may not have presented itself immediately. Yet, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Here, there is no additional evidence of retaliatory conduct before the Court that could create a genuine issue of material fact regarding causation. Defendants also dispute that certain allegedly adverse acts even took place—more specifically, that Defendants threatened to start tenure proceedings when they did not

---

[4] Defendants also argue that Plaintiff's retaliation claims to the extent they are based on her being kept on administrative leave are time-barred. The Court considered and rejected this argument at the motion to dismiss stage. (Dkt. 27, PgID 350-52.) Much of that analysis remains true. Because the Court is granting Defendants summary judgment on Plaintiff's claims in their entirety, however, the Court will not address this argument again.

8

intend to do so and that they conspired with the psychologist to delay production of the report.

And even if Plaintiff could establish her prima facie case, Defendants have articulated legitimate non-retaliatory reasons for their actions and provided sufficient evidence establishing that they would have taken the same actions in the absence of Plaintiff's first lawsuit.[5] More specifically, Defendants point to Plaintiff's inappropriate behavior as a reason for not allowing her to return to her teaching job and placing her on administrative leave. Defendants also aver that they did not certify Plaintiff's continuing education hours because of misrepresentations they believed she had made in her renewal application. In sum, the Court finds that Defendants have discharged their summary judgment burden.[6]

### IV.     Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

                              <u>s/Nancy G. Edmunds</u>
                              Nancy G. Edmunds
                              United States District Judge

Dated: October 13, 2020

---

[5] Defendants argue that collateral estoppel precludes Plaintiff from arguing pretext. Because the Court finds that Defendants have set forth legitimate, non-retaliatory reasons for their actions and there is no evidence of pretext, there is no need to address this issue.

[6] Because the Court is granting Defendants summary judgment, it need not address their arguments regarding whether Plaintiff's claims would entitle her to money damages. And while Defendants' request for sanctions within their motion for summary judgment was procedurally improper, the grant of summary judgment renders that request moot.

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 13, 2020, by electronic and/or ordinary mail.

                                          s/Lisa Bartlett
                                          Case Manager